May Term, 1860.

MOSHER
v.
THE STATE.

------------

## MOSHER *v.* THE STATE.

Whether an instrument is forged or not, is a question for the jury; and no proof of its forgery is necessary before it is offered as evidence.

*It seems* that the identity of papers taken upon the body of a prisoner may be sufficiently proved, without identifying any particular paper, by the officers taking and having them in charge.

The Supreme Court cannot determine whether such papers were proper evidence, or whether the admission of them as evidence injured the defendant, unless the papers are before the Court.

APPEAL from the *Vanderburgh* Circuit Court.

HANNA, J.—This was an indictment for forgery, and for uttering a forged instrument, &c.

Saturday, June 2.

Plea of not guilty, trial, and conviction.

Two points are presented—

1. That the Court erred in the admission of evidence.

2. That a new trial should have been granted.

The instrument alleged to have been forged, &c., was a draft purporting to have been drawn in *Louisville, Kentucky*, by *Thomas H. Hunt & Co.* on *A. D. Hunt & Co.*, in favor of *H. W. Mosher* or bearer.

The state introduced a witness, who testified that he was "acquainted with the signature of *Thomas H. Hunt & Co.*, having received a number of letters from them. The signature to this draft I should think was not genuine. I think it is forged." After hearing this evidence, and over the objection of the defendant, who insisted that

the forgery was not proved, and asked permission to cross-examine the witness to show he had no sufficient foundation for his judgment, the Court permitted the prosecutor to introduce the draft as testimony.

As to the last part of the objection, that is, arising out of the refusal to permit the cross-examination at that time, we do not think there is much force in it, under the circumstances, for the witness immediately proceeded to state at some length his means of knowledge in reference to the falsity of the signature; but stated that he was not acquainted with the members of the firm, and derived his information from letters received, &c. Whether the instrument was forged or not, was a question of fact for the jury, and, therefore, no preliminary proof of its forgery was necessary before it was offered as evidence. No objection appears to have been offered to the witness giving an opinion as to the genuineness of the instrument. Whether he had shown a sufficient knowledge to authorize him to give such an opinion, is a question, therefore, not before us. It does not arise on the motion for a new trial, because the evidence is not all in the record.

The state proved by the sheriff, that at the time of the arrest of the defendant, the "draft and some letters, and a mass of miscellaneous papers, were found upon his person." The witness was not able to identify any of the mass of papers, but thought they were the same—"those left on the table at the last term were the papers found on his person."

The clerk, in speaking of the same papers, testified that he "took them from the table at the last term of the Court, and they have been in my possession ever since." They were then admitted in evidence. The defendant objected, because they were not sufficiently proven to have been in possession of the defendant, nor were they legal testimony in the case.

Was the ruling right, and if not, what was the effect? The record does not show but that the ruling was right as to the question of identity. Whether they were proper evidence, we cannot determine, as they are not before us.

For the same reason, we cannot say that they injuriously affected the defendant.

The last point is, that a new trial should have been granted. Upon this, it is insisted that there is no evidence that a forgery had been committed in *Vanderburgh* county, nor was it a sufficient uttering, &c.

As to the first point, there was no direct evidence; as to the second, *Earle* testified that the defendant offered a draft of the same amount and same parties, and of the same general appearance, at the counter of the *Crescent City Bank*, and asked witness if he would give the defendant the money on it, and was answered that he would if defendant would get some one to indorse for him. The name of Judge *Foster* was mentioned. The date or number of the draft not recollected. Witness could not state that this was the same.

*Foster* testified that defendant called on him and presented a check, and asked him to indorse it. Witness told defendant that he had no evidence that the signature was genuine—had doubts at the time. Defendant said he wanted the indorsement, so as to get the cash on it.

We think the evidence tends so strongly to sustain the verdict, as to prevent us, under repeated decisions, from interfering with that finding. 1 Bish. Cr. Law, § 185.

*Per Curiam.*—The judgment is affirmed with costs.

*J. J. Chandler* and *J. B. Hynes*, for the appellant.

*J. M. Shanklin* and *J. E. McDonald*, Attorney General, for the state.